The next case call for argument is Gasco versus Megalith. The case is Gasco versus Megalith. Although I've met a couple of you frequently through the past. This case arises out of one element of the court proceedings that 50% of the populace is involved in, the family court. Because of the rates of divorce, most people that we meet are going to be exposed in some way to the family court. And I should say, maybe half of you. The issues that are here, as I look back at the beginning of my career, which is somewhat distant in my memory now. At the beginning of my career, we began to judge arrearages that child support may be entered, but they were seldom enforced. And we have watched in our lifetime, in our careers, a mechanism that has allowed that, that has alleviated that deficiency. Because indeed, if there is an award of child support, it should be paid if there's an arrearage. There's now a mechanism to enforce it. So I'm not up here to say I disagree with the mechanism. However, that mechanism is based upon the statutory directives of the Marriage Act and the Civil Procedure Act. And that's why I'm here today. That's why the appeal today. This case involves an award or an entry of a final order in August 2012, finding child support at a certain amount. It was called a permanent award. And as I point out in the briefs, and you'll see in the record, in that August 2012 entry, no further matters were set. The case was closed. My opponent points out that there were, or in the brief that there are suggests, as did the trial court, that somewhere between 2010 and the entry of the order that I'm appealing today, that there had been a potential effort on the part of Mr. Micula, my client, to withhold or hide income information. And in fact, when the court entered the order in July, now keep in mind there are a series of orders that become final in August of 2014. And it is that final order I seek an appeal from that we're looking at all of the issues that commence with the period that begins in February of 2014 when a pro se motion was filed by Ms. Gaskell, Mrs. Gaskell, who is not here today. These clients are pro se. And then orders are entered in March. As a result of those orders, I became involved in the case in April. Farmland entered my appearance in May. And the substantive orders that culminate in the August order are April, June, July, culminating in the final order. The wife's pro se motion to increase child support was February 2013. February 2013. Did I say 1413? No, no, no. That's right. I had it down wrong in my notes. I had November, but it was February. It is in February. Let me ask you a couple questions about that if I can. And that's really the only pleading that she filed that then prompts the court to be doing something. Exactly. And in that pleading, does she ask for retroactive support at any point before the filing of the pleading? She doesn't ask it. Remember, pro se. She says, I want to review child support for 2009 to 2013. So in that way, you can say, yeah, she did. Okay. However, we are seeking, and the point I'm trying to make, and really emphasizing the reply brief in response to the argument by the appellee, is that that is not an appropriate pleading to do what the court did. Now, we have a final order in August of 2012 that says, here's child support in September. There is a history, and I'm not, there are three points I make in the appeal, and you'll see a history in this case, as there is frequently in Mass in St. Clair County, where particularly a pro se and the state is involved, that once somebody loses employment, because of a specific provision in the court's order that I'll address in just a minute, people would file, usually the noncustodial parent, the father, usually would file a petition saying, my employment has been terminated, and I want to reconsider. You'll see all the pro se say, I want to terminate child support, but that's not what they do. They come in and consider some employment. And that has become, in this particular case, you can see that's a procedure that is followed. And that procedure suddenly stopped in this case. I'll address that last. I'm not so sure I'm overly critical of that, but how they got there, I am. That's, and the reason they would do that is because of the language that is in the form order that was used by the state, sorry, by Mass County Courts, that said, and I recited in the brief several times, but it says that the parties, that the noncustodial parent must, within 10 days, disclose change of employment, unemployment, workers' common. And failure to do so in conjunction with nonpayment of child support, failure to do so in 60 days would be indirect intent. So, again, most of these folks, and remember I got involved in this late, most of these folks are pro se. They're not as trained. They're not trained lawyers. And they are looking at that. So Mr. Mikulak, you'll see frequently, every time he was on unemployment, he filed a pro se petition, the state would look at it. They'd recalculate based upon his unemployment. Then they'd set it in a period of time. And most of the time, he'd come back and start employment again. And he would, they would recalculate it upwards. They had adopted this procedure of doing this routine. Now, one of the elements I raised in this appeal is that the court, in this case, when I stepped in, filed a petition to modify child support in June, before the quarter I'm appealing from, the court, for the first time, the state objected to that and said, relying upon decisions that have been entered by this court, the first thing all the courts decided, say, we have a right to average what has happened in the past and make it a prospective order, so we're not coming in every time. You know, that has happened. The counsel, they filed a petition to modify the, or to add to the record, but counsel in her appellate brief showed that subsequent to this, no bond was filed. We've had a hearing, and he, that procedure's been followed, and Mr. McIntyre's been paid since then. And you're not arguing with that, are you? I'm not really arguing. I raised it in the appeal. I don't want to wait. But let's face it. That is, what are we trying to do? We're trying to avoid coming to court over 60 years. Right, right. I mean, the court can certainly rely on past income in determining what you would project that his income would be. Now, taking that, they may do so, but that must be a prospective order, and that's why I'm here. What has the court done here? And Judge McClain and I have known each other for a long time. I've tried cases against him. He's been on the bench. But I solely, I absolutely disagree with the thought here. What he found, what he entered in an order in June, was that I'm going to apply child support retroactively before the final order entered in August 2012 because there's evidence that Mr. McIntyre has intentionally withheld evidence since 2010. Now, he's failed to provide any record of his income or adequate. Well, and let me ask you a question about that. What kind of a hearing was there? I mean, did Mr. McIntyre get on the stand and explain any of it, or was it just the judge looked at these tax returns and made that decision? The judge basically looked at it. Now, you've been on there. You know what it's like. These courts are full, particularly in Madison State, Clark County. Do we have a formal hearing? No, because to do that, quite honestly, we don't get anything done. But Mr. McIntyre was never questioned about it. Now, look when he was asked to provide, what's the final thing the judge did here? He entered a judgment going back before August 2012 and finding that in 2011 his child support should have been doubled based upon tax returns that were requested for the first time in a court order entered in April of last year. The state, the Madison County states are turning on me now. So just to make sure I understand what happened here, he ordered retroactive child support back beyond the pleading, the pro se pleading filed by the wife despite the statute, and then this arrearage order is based on that retroactive amount. So, I mean, as far as the, if the retroactive order was wrong, the arrearage order is wrong. Exactly. Okay. Looking at this case, which is sort of a mess, it seems to me that the trial court did not really take into substantial consideration, the frequent periods of unemployment that your client had. It had in the past, but oddly enough, once I got involved, no. Once I filed that petition, well, in April, the court reversed itself. Let me say it. Before I got, I entered in that. The court entered an order and said, it basically said you've got to reduce the 2011 returns and we're going to recalculate the child support. Yes, that is so. But it happened for the first time in April prior to the final order that's on appeal here. The court simply reversed the procedure that it had always done and then made a finding without any evidence. There is no evidence that Mr. Mikulak was ever asked to provide evidence. Again, these folks are. So your position basically is at that point in time, the court retrospectively altered everything as far as the child support based on evidence that had not been before it previously, and in the course of doing that, in its order, did not take into consideration the frequent periods of unemployment that your client notified the court about. You said it better than I have. That's exactly what I'm saying. Now, could the court consider retroacting income based upon a petition timely file? Well, based upon what this court has ruled, they could, but only prospectively. And could the court make it retroactive to a certain point? I think I can see it in here. It could have gone back to February when the pro se motion was filed. But the arrearage in this case is calculated back to 2011. Suddenly, this man has $30,000 plus in arrearage and accrued interest. The court did not have subject matter jurisdiction to do anything like that until a petition was filed, even the pro se petition. Now, as I think will be argued by my opponent, the Rogin case that she cited. But in that case, it was the Civil Procedure Act that they wrote in 1401 that allowed the court to consider a retroactive order if there were certain evidentiary matters provided. Well, in 214.01, you go in. What they're asking there is to vacate some prior order and say, you know, this order was entered fraudulently because, you know, evidence was hidden or whatever. So we want to vacate that prior order and go back to that order. And if you wouldn't have entered that order had you known the additional evidence. But that's not what we had here. That's not what we had. Now, again, I know the courts want to get a lot. We have to sometimes latitude pro se. But we're not dealing with pro se attorneys here. We're dealing with the state's attorney that if they felt that was it, they had to file a plea. You will know there is no pleading here filed by the state's attorney until I filed the motion in greater detail than the usual pro se motion saying there's been a change of circumstances in June of 2014 in which I said he's off work again and we want to modify it. And the state filed a motion in opposition to that stating we can now go back to average income. That's the first time Madison County state's attorney filed a plea. Nothing that was in some way. No pleading was on file that would allow this court, the Davis Court Subject Matters jurisdiction to reverse the August 2012. Second, under the statute, the provisions of 510A, the court could consider prospectively a change of child support. And I agree. I think they could consider whatever evidence they wanted to. But it could only retroactively go back to the layman pro se motion in February. Now, the court had no subject matter jurisdiction before February of the year in which the order on appeal was in. And thus, thirdly, this arrearage, this possible arrearage, should never have had no jurisdiction to enter that or even consider the evidence of an arrearage beyond February. What am I asking? A reversal of the August? I think, you know, I can see the court saying remand it back, the figure of the arrearage from, that would accrue from February on, but not an arrearage that accrued from 2011. And that's exactly what we had. Finally, everybody likes to hear me say finally. I'm somewhat criticized. One of my arguments is there's no evidence in the record to document the arrearage. And the public says, well, it's up to me to provide the record. And so that's a case in which there was an issue. Go ahead, please. It's whether or not the record was properly prepared. We're not talking about records. We're talking about evidence. This court entered a judgment without any documentation of the evidence on which it considered the arrearage. Thus, there's no evidence to support the arrearage. Thank you, counsel. Counsel? And we'll be happy to give you a few extra minutes if you need them. Let me start off by asking you the question that I asked your opposing counsel. It seems from my reading of this case and all the permutations and twists, it seems the trial court basically made a retroactive ruling based on something not available to it before and without, you know, there's an argument that it was made without evidence and factually infirm in that it did not consider the frequent and periodic periods of unemployment that Mr. Michelate seemed to have on a regular basis. We all heard your opposing counsel's response. What would your response be to that question? Your Honor, and may I introduce myself? Oh, of course. Assistant Attorney General Linda Buocchianza on behalf of the Illinois Department of Health Care and Family Services. Your Honor, I would submit that, respectfully, the record shows an entirely different picture from the one that Mr. Michelate has painted. From 2007 onward, Mr. Michelate, who was represented by counsel at various points in the proceedings and so he does not pro se and rely on his own devices, he was represented by counsel, and the record shows that he consistently was behind in his child support payments. There were calculations that were included in the record at earlier points, and in February of 2009, the record shows that he owed $40,000 in unpaid child support. And then moving forward in October of 2010, he owed, I believe, $17,000 in arrearage, not including the statutory interest. So, in overall, the record shows that this is someone who is consistent. When you say the record shows that, there was an order entered that says he owes $17,000? Yes. Okay, go ahead. Your Honor, if I can point you to the sites. So, the February 2009 judgment, that is reflected on page C184 of the record, and then the late October 2010 judgment is C233 of the record. Is there something in the record, counsel, that shows how these arrearages were calculated, going from that order you just referred to to the more recent order? Yes. So, the 2009 calculations are included in the record. There are not the later calculations for 2010 and then subsequently in 2014. I will note that on page C310 of the record, which is the August 2014 order in which the court made its final arrearage determination, it notes that arrearage calculations were provided by the state. So, it's incorrect to suggest that there was no evidence and that essentially the court was pulling the numbers. Does that mean the state just handed them a number? I don't believe so. I mean, at other points in the record, the court requested. I'm sorry. We know there was no hearing. No witnesses were called. Nobody testified to anything at this hearing to determine whether or not child support should be modified up or down. Right. How can there not be a hearing? You've got pleadings filed. People are asking for relief, and you show up. Is it permissible to have no evidence or anything? There is evidence. I mean, the documents and the fact that his tax returns, that's evidence. The support amount is based on the statutory requirement of 28% for someone who has two children, as Mr. McAuliffe does. So, based on the evidence that's really necessary is how much money he makes. Well, let me ask you this. The arrearage that was calculated, did that include the retroactive increase to 2011? Your Honor, that's not entirely clear from the record. Okay. But, again, there's a problem there. I see where the complaint comes from. Because would you agree with me that if the trial court did not have the authority to retroactively increase child support beyond the pleading by the wife, if not, then the arrearage calculation has to go out, too, because we can't tell whether that was included in it. Well, I mean, it depends on, first of all, I would argue that the trial court in this case did have authority to make the retroactive child support increase. I said if, so just based on my hypothetical, then the arrearage can't be right if the retroactive increase is wrong. If it includes, if the arrearage amount includes the retroactive, if it's not just based on what he owed previously. Don't you think it's a problem that you don't know that? Well, Your Honor, again, counsel was present at the hearing, and the calculations were presented. Counsel would be more familiar with what those calculations were since he was there. To the extent there's settled law which says that to the extent that there's an incompleteness in the record or that there are any doubts about the record, that's resolved in favor of the circuit court's judgment and against the appellant. There's a difference between that and there being no evidence as to how something's calculated. I mean, the problem with this whole thing is, I mean, at no point did the trial judge say, okay, I'm calling Gaskell versus McCulloch. I'm calling it on the pending petitions for changed child support. Call your first witness. Your Honor, I'm not certain if that's what's normally done in these sorts of cases. It's what's supposed to be done. It didn't happen in this case. I mean, I can understand, you know, it's expeditious to just have people approach the bench and just start making a bunch of decisions, but it's supposed to be based on evidence. Again, Your Honor, I would submit that it was based on evidence. Initially, the support orders were calculated based on the paycheck stubs that Megalod presented. Then, after these motions that were filed in November of 2013 and in February of 2014, the court requested his income tax returns so that the court could make a proper calculation based on what he actually earned. Once the court discovered what he actually earned, it adjusted the support amount. Sua Sponte, back to January 1, 2011. Well, no, Your Honor, it wasn't Sua Sponte. In the November 2013 petition that Gaskill filed, she requested that the support order be modified. Then, in the February 2014 motion that she filed, she requested that he review his income tax returns. She asked, actually, for from 2009 to 2013 for those tax returns to be reviewed and for arrears to be calculated. So, it wasn't Sua Sponte. So, you're saying there's documentary evidence rather than court testimony? Absolutely. Documentary evidence is evidence. Is there anything that the party stipulated for the judge to decide everything based solely on the tax returns? There was no testimony. I mean, there's no indication one way or another. There wasn't a hearing. In other words, there was not a hearing. Your Honor, respectfully. Respectfully, I've sat 11 years in the trial court. I know what's supposed to happen at a hearing, and it's not a judge saying, well, I've looked at the tax returns. Nobody else is going to testify. There's no other stipulations. And just on what I happen to be looking at right now, I'm deciding the case. You're not arguing you can do that, are you? Well, Your Honor, again, counsel was present at the hearing, and there's nothing in the record that suggests he sought to introduce any witnesses or asked for his client to be allowed to testify. I guess it just sort of depends on where the burdens lie. And in this case, based on the well-settled law that where there are questions in the record, it's resolved in favor of the judgment, I would submit that the judgment should be upheld. One of the principal issues in this case seems to be the issue of any retroactive support before the date of the pro se motion to modify. What argument can you make to this court to support that modification? Yes, Your Honor, Your Honor is correct to point out that the general rule is that a modification petition will go back to the date or will be for installments that occur after. But that general rule assumes that there's been honest disclosure of the party's income. And the trial court found that that was not the case here. Once the trial court had access to his income taxes, he realized that, you know, the check stubs that Michelot was providing were not an accurate picture of his income. And so he modified after based on Gaskill's filing. He modified the support order going back to the evidence that he was presented that determined the party's income. And if you look at In Re Rocha, which we cite in our briefs, the same situation or a very similar situation occurred there, where the trial court had evidence that the party had misrepresented his income for a period of seven years before. And so he made the petition or made the support order retroactive to seven years prior to when the petition was filed. And I would submit that that was not an abuse of discretion in Rocha and it's not an abuse of discretion in this case. When the trial judge has a record that indicates one level of income, buys documentary evidence. Yes. And then on the other hand has documentary evidence by tax returns that there's a disparity between the two. Do you think that it is appropriate for the trial court to resolve that on the basis of the documentary evidence or should say to counsel for all the parties, I see the disparity. I think we need to explore that. I'll give you an opportunity at a hearing set on such and such date to go into this deeper and to offer testimony or other kinds of evidence as to the disparity and whether it in fact exists, why it exists and how this should be resolved rather than make a decision based on the documentary evidence alone without further inquiry. Your Honor, I would say that there isn't a true disparity in the sense that it's unclear what his total income was for that year based on the check stub. I think what is clear is that the income tax returns for a given year reflect what you have earned throughout that year. And I think that what was happening in this case is that the single check stubs that Michelot was presenting were to underreport his income. But I would say that the tax returns don't lie. They show what you have earned during that year. And so it's appropriate for the circuit court to make its determination of what support amount you're required to proffer based on what you've earned in a single year. With regard to... Your Honor, there's a question where the issue was raised about whether the circuit court improperly denied his last motion to suspend child support payments. And I think that this court has noted that it's appropriate to rely on the income averaging in situations like this where there's uncertainty about what the party has actually made. And again, the reliance on income averaging is because the income tax returns will tell you what that party has made. And so it's appropriate to use that as a measure to ascertain what the proper amount of child support payments that should be made in a given year. Unless this court has further questions. And then with regard to jurisdiction briefly, the court had jurisdiction because, as I have mentioned, I believe Ms. Gaskill's pro se motions asked for not only for the child support to be modified, but also for the court to go back and reassess its income tax returns to determine the proper amount of arrearage. And so unless this court has any further questions, we would ask... I don't believe we do. Thank you, counsel. We would ask for the circuit court's order to be upheld. Thank you, counsel. Thank you. Counsel? Madison County State's attorney entered an appearance as the intervenor in March of 2008. When you look at the record, you'll see from that point on, Madison County State's attorney is directing the assessment of child support. In the order of August 2012, the Madison County State's attorney required that he bring in paycheck stuff and figure the child support. When you look at the record, you will see the Madison County State's attorney sends no request for production of documents until after the pro se motion filed in February, that I say is the only motion they can't hear. At that time, they asked for 2013 and 2014 returns. There is no issue of 2011 returns until the order that was entered, I believe, in April. When on the order here, there's a note saying Mr. Miculot will bring in the 2011 returns. The argument here is that Mr. Miculot withheld, as was the evidence in Roga, which, again, was a civil procedure, a case in pursuit of civil procedure, to reverse an order. No, it was never asked for these records. There was no evidence that he withheld or tried to hide the records. In fact, nobody asked about 2011 until an entry in order in April that precipitated him coming in and I entered my appearance. This is not Roga. One, pleadings aren't there. And two, there's no evidence that Mr. Miculot withheld any evidence he wasn't asked about. And there were attorneys involved. Maybe it would be different if we only had pro se people here. But we have the Madison County State's attorney familiar with the rules dictating this and following it. And the Madison County State's attorney was there representing the Department of Health Care and Family Services? Right. In fact, I made a mistake on this, and you know me, I've made many a mistake, but when I first entered my appearance, I didn't send a copy to Ms. Gaskell. You kind of assume you send it to the attorneys of record, and it was pointed out to me. The State's attorney only represents the State's interest. And in this particular case, the State has come up with a huge arrearage that is to the advantage of the State, and granted to Ms. Gaskell too. But the State had the opportunity to file a petition, and they felt that was something that was never done. And in fact, at no time did the State even ask for 2011 until it was kind of an offhand included in the order of April 2011, and Mr. Migulot wasn't represented. So I'm not saying anybody's trying to sneak around or do anything, but we're lawyers, we've got to follow the rules. Finally, you'll notice on the August 18th, it says, hearing held. It says, mother appears, father appears personally with attorney of William Berry. Hearing held. Well, and the State provides arrearage calculations provided by HFS. It was never offered into evidence. It shows that I object to it. We're lawyers. We offer evidence. And the evidence I wanted this Court to present, I did offer because in July, I had the Court enter an order. We are considering these tax returns that go back to 2011, and that's why the language respondents, by being the responder, offers Exhibits 1, 2, 3, 4, and 5, which it put in the record to show that the Court considered evidence that it should and could not consider because it simply didn't have pleadings before it to allow it to consider. Thank you. Thank you, Counsel. We appreciate the briefs and arguments of Counsel. We'll take this case under advisement. We'll take a very short recess and then resume oral argument.